UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David McGee,

      Plaintiff,

      v.                       Civil Action No. 1:10-cv-11

Andrew Pallito, et al.,

      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 157, 161)

Plaintiff David McGee, a former Vermont inmate proceeding *pro se* under 42 U.S.C. § 1983 and various provisions of state law, claims that Defendants violated his rights in numerous respects during the course of his incarceration.  Specifically, his 116-page Complaint (Doc. 7) details thirteen distinct causes of action, ranging from repeated retaliatory transfers to a denial of basic sanitation services.  Defendants are 35 past and present employees of the State of Vermont ("State Defendants"), Prison Health Services, Inc. (PHS), and several unidentified nurses (Nurse(s) Doe and Nurse Manager Doe).  As to PHS, McGee claims in Count XI that he received constitutionally inadequate health care while in prison.

Presently pending before the Court is a Motion for Summary Judgment filed by PHS pursuant to Fed. R. Civ. P. 56 (Doc. 157).  PHS contends that it is entitled to summary judgment because McGee does not have an expert to support any negligence

claim, and because McGee cannot prove that the medical treatment provided by PHS was tantamount to cruel and unusual punishment.  Also pending before the Court is a Motion to Dismiss filed by the State Defendants pursuant to Fed. R. Civ. P. 37 and 41(b) (Doc. 161).  The State Defendants seek dismissal as a sanction for McGee's failures to provide discovery and for failure to prosecute his case.  For the reasons that follow, I recommend that PHS's Motion for Summary Judgment (Doc. 157) be GRANTED with respect to McGee's federal claims, and that the Court decline to retain supplemental jurisdiction over his state law claims.  For the same reasons, I recommend that the Court, on its own motion, GRANT dismissal of McGee's federal claims against Nurse(s) Doe and Nurse Manager Doe, and decline to retain supplemental jurisdiction over his state law claims against them.  I further recommend that the State Defendants' Motion to Dismiss (Doc. 161) be GRANTED and that all of McGee's claims against the State Defendants be DISMISSED with prejudice.

## **Procedural History**

In a Report and Recommendation dated August 13, 2013, I outlined some of the highlights of the procedural history in this case.  (*See* Doc. 156 at 13–14.)  It is not necessary to recite all of those events here, although I note that, as a result of rulings on earlier Motions to Dismiss, five of McGee's original thirteen causes of action have been dismissed.  Procedural history relating to PHS's pending Motion for Summary Judgment is set out immediately below, and additional procedural history bearing on the State Defendants' Motion to Dismiss appears in Part III, *infra*.

PHS previously filed a Motion for Summary Judgment substantially similar to its

pending Motion.  (*See* Doc. 154.)  In the August 13, 2013 Report and Recommendation, I recommended that the earlier motion be denied for failure to comply with Local Rule 56(e).  (Doc. 156 at 23–24.)  The District Court adopted that recommendation.  (Doc. 158.)  PHS's current Motion for Summary Judgment includes the requisite proof that McGee has received notice of the nature of summary judgment and the consequences of failing to respond.  (Doc. 157-7.)  McGee has not filed an opposition within the deadline specified by Local Rule 7(a)(3)(A), nor has he sought an extension of time.  He has also not disclosed any medical expert within the disclosure deadline, and has stated that he does not intend to call a physician to testify as a medical expert in this action.

### Factual Background

The following facts are drawn from the assertions in McGee's verified Complaint (Doc. 7) and his Opposition to Defendants' Motion to Dismiss (Doc. 71)[1] as well as the factual assertions in PHS's unopposed statement of material facts (Doc. 157-1) that are supported by the record.  *See* Fed. R. Civ. P. 56(e); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244, 246 (2d Cir. 2004) (noting that non-movant's failure to oppose a motion for summary judgment "allow[s] the district court to accept the movant's factual assertions as true," provided that the court is "satisfied that the citation to evidence in the record supports the assertion").

Plaintiff David McGee was incarcerated at Southern State Correctional Facility

---

[1] I treat the Complaint and the earlier Opposition as verified because they both include statements pursuant to 28 U.S.C. § 1746.  (Doc. 7 at 116; Doc. 71 at 156.)  Verified complaints may be treated as an affidavit for summary judgment purposes.  *See Patterson v. Cnty. of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment").

(SSCF) in Springfield, Vermont, from April 22, 2009 to July 21, 2009.  While incarcerated at SSCF, McGee was prescribed, among other medications, Benadryl, Naprosyn, Colace, Metamucil, Cafergot (a.k.a. Ergotamine), Wellbutrin, Depakote, and Buspar.  The Benadryl, Naprosyn, Colace, Metamucil, and Cafergot were prescribed to treat McGee's medical needs: Benadryl for allergies and sleep; Naprosyn for migraine headaches and back pain; Colace and Metamucil for constipation; and Cafergot for migraine headaches. The Wellbutrin, Depakote and Buspar were prescribed for his depression, bipolar, and anxiety disorders.

In his verified Complaint, McGee alleges that during his time at SSCF, "several of these chronic medications were allowed to expire without automatic renewal, or were wrongfully discontinued, by SSCF Nurse(s) Doe without warning on at least 3 separate occasions, causing Plaintiff to go without the medications for, at times, over a week." (Doc. 7 at 59, ¶ 489.)  According to McGee, PHS, Nurse(s) Doe, and Nurse Manager Doe "maintained a custom of failing to renew and re-order inmates' chronic prescriptions before they expired and, instead, required inmates to submit medical requests to renew the prescriptions *only after* they had learned the prescriptions had expired."  (*Id.* at 59–60, ¶ 492.)  McGee also alleges that PHS, Nurse(s) Doe, and Nurse Manager Doe "maintained a custom of allowing non-prescribers (*i.e.* nurses or administrative staff) to discontinue inmates' medications without warning before the prescriptions had expired." (*Id.* at 60, ¶ 493.)

The Complaint does not specify precisely which prescriptions were allowed to expire or be discontinued, but does allege that, in addition to some of the prescriptions for

his medical needs, McGee's mental health medications were also discontinued.  (*Id.* at 60–61, ¶¶ 497, 502.)  On one occasion when his mental health medications had been discontinued, McGee submitted an "Emergency" medical request to get the medications renewed, but was advised that the psychiatrist could not see him to renew the medications for at least a week because the psychiatrist was "overloaded" with paperwork from other inmate's medications that had been discontinued by Nurse(s) Doe.  (*Id.* at 60, ¶ 497.)

PHS has submitted the affidavit of Cecelia Vicuna-Keady, a Doctor of Nursing Practice who worked at SSCF as a contractor for PHS.  According to Vicuna-Keady, at the time of Plaintiff's incarceration, PHS had a personal services contract with the Vermont Department of Corrections (DOC) to deliver health care services to inmates in Vermont in compliance with the standard of care set forth by the National Commission on Correctional Health Care.  As part of its contract with the DOC, PHS oversaw the administration of medications for medical treatment, and had the authority to prescribe, discontinue, and change the dosage of medications for medical treatment.

The administration of mental health medication, however, was controlled by a provider that was unrelated to PHS that contracted with the DOC to provide mental health services to inmates.  Vicuna-Keady states that PHS did not have the authority to prescribe, discontinue, or modify prescriptions for medications related to an inmate's mental health needs, and PHS did not have authority to make any changes to Plaintiff's prescriptions for Wellbutrin, Depakote, and Buspar.   She further states that with respect to the mental health prescriptions, PHS's responsibility was limited to dispensing medications as directed by the mental health provider.

McGee's prescriptions for Benadryl, Naprosyn, Colace, Metamucil, and Cafergot (i.e., all of the medications listed in Count 11 other than the mental health medications) were prescribed as "PRN" medications, meaning that these medications were to be taken on an as-needed basis.[2]  Medications prescribed on a PRN basis (hereinafter "PRN medications") were provided to inmates during either medication pass ("med pass"), or when a patient was being treated in response to a sick call request, at which times patients were asked if they wanted any of their PRN medications.  If a patient repeatedly declined a PRN medication, the pattern of refusal was brought to the attention of the prescribing provider to determine whether that prescription was medically necessary, and whether the prescription should be discontinued.

Vicuna-Keady's review of McGee's medical records reveals that between April 22, 2009 and July 21, 2009, McGee repeatedly refused to take his PRN medications.  A June 21, 2009 non-compliance notice stated that Plaintiff had refused 28 doses of Benadryl in a row, 19 doses of Colace in a row, and 40 doses of Metamucil.  Because McGee refused to take his PRN medications, some of his prescriptions were discontinued for limited periods.  First, his prescriptions for Benadryl, Colace and Metamucil were discontinued on June 21, 2009, and were reinstated on June 24, 2009.  Second, his prescriptions for Metamucil and Naprosyn were discontinued on July 7, 2009.  They were reinstated on July 14, 2009.  McGee's prescriptions for Benadryl and Colace were discontinued on July 13, 2009 and were reinstated on July 14, 2009.  On July 14, 2009, in

---

[2] *See Stedman's Medical Dictionary* 1576 (28th ed. 2006) (defining "pro re nata (PRN)" as meaning "[a]s the occasion arises; as necessary").

response to a grievance by McGee, Vicuna-Keady issued new 90-day prescriptions for McGee's PRN medications—including Benadryl, Naprosyn, Colace, Metamucil, and Cafergot.  (Doc. 157-4 at 3.)  To ensure that McGee's prescriptions were continued despite his refusals, Vicuna-Keady added a note to McGee's file that stated, "if inmate does not ask for medications is okay."  (*Id.*, ¶ 15.)

According to McGee, during the periods when he was denied his medications, he suffered "pain and degeneration of his medical and mental health conditions, which interfered with his daily activities."  (Doc. 7 at 59, ¶ 491.)  In his January 2011 Opposition, he offered the following additional details.  He asserted that he went without his PRN medications for "up to and over a week" in at least three separate instances. (Doc. 71 at 71.)  Without Benadryl he experienced worsening of his environmental allergies, including "headaches, severe itching & sneezing, difficulty breathing from swollen sinuses and overproduction of mucus," and he was unable to go outside.  (*Id.*) Without Cafergot he suffered "severely painful migraine headaches."  (*Id.*)  Without Naprosyn he suffered "worsening of his back and knee pain" and was unable to engage in normal exercise.  (*Id.*)  Without Colace and Metamucil he experienced "intestinal pain and bleeding."  (*Id.*)  McGee also asserted that he went without his mental health medications "in excess of a week in at least three separate instances," and that as a result he "grew depressed and withdrawn, had anxiety attacks, and turned into a 'shut in' unable to leave his cell due to the distress."  (*Id.* at 70.)

In a February 2013 deposition, McGee testified that he does not recall which of the medications were discontinued, he has no recollection of how many times between

April 22, 2009 and July 21, 2009 he actually requested his PRN medications, and he does not recall any dates on which he was denied medication.  Plaintiff testified that: (1) between June 21, 2009 and June 24, 2009 he does not recall suffering any consequences when his Benadryl, Colace and Metamucil had been discontinued; and (2) between July 7, 2009 and July 14, 2009—when he was without prescriptions for Naprosyn—he does not specifically recall having any headaches.  The records show that for only one day (between July 13, 2009 and July 14, 2009) McGee was without PRN prescriptions for a laxative, and while Plaintiff does not recall specific dates, he insists that he was constipated at least once.  Also, without being able to recall specific dates, Plaintiff insists that he could not go outside due to allergies at least once.  With respect to his mental health medications, McGee testified that, when his Wellbutrin was discontinued on June 24th, he felt depressed, paranoid, anxious, and his mood was unstable.

## Discussion

### I.   PHS's Motion for Summary Judgment

#### A.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether there is a genuine issue of material fact, the Court must "interpret all ambiguities and draw all factual inferences in favor of the nonmoving party."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

The burden of demonstrating the absence of a genuine issue of material fact rests upon the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(2). The Rules require that a nonmoving party set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions, showing that a genuine issue exists for trial. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citing *Celotex,* 477 U.S. at 324). The Motion for Summary Judgment in this case is unopposed, but the Court is still required to review the Motion and determine whether PHS has established that the undisputed facts entitle it to judgment as a matter of law. *Vt. Teddy Bear Co.*, 373 F.3d at 246–47.

**B.     McGee's Eighth Amendment Claims**

**1.     Eighth Amendment Standards**

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). A prisoner must therefore demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Both the objective and subjective components must be satisfied in order for a plaintiff to prevail. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). *Estelle*'s requirement applies to psychiatric and mental

health care as well as physical health care. *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989).

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment, the impact of the ailment upon an individual's daily activities, and the severity and persistence of pain. *See Chance v. Armstrong*, 143 F .3d 698, 702 (2d Cir. 1998). "The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Chance*, 143 F.3d at 702. The Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). Where, as here, the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" in performing the objective analysis. *Smith*, 316 F.3d at 185.

The subjective component requires evidence that the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows

of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment.  429 U.S. at 104–05. "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 835).

As the Court of Appeals has noted, the "deliberate indifference" element describes a state of mind that is "equivalent to criminal recklessness."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") (internal quotation marks omitted); *Hathaway*, 99 F.3d at 553 ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .").  Furthermore, "it is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner

11

might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Expert testimony is not necessary to support a deliberate indifference claim under the Eighth Amendment. *See Hathaway*, 37 F.3d at 68 ("We have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony. The inquiry remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law."); *see also Oliver v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 191 (2d Cir. 2005); *Cumberbatch v. Port Auth. of N.Y. & N.J.*, No. 03 Civ. 749(BSJ), 2006 WL 3543670, at *9 (S.D.N.Y. Dec. 5, 2006).

### 2.  PRN Medications

#### a.  Objective Prong: Serious Medical Need

I begin with the objective prong of the Eighth Amendment analysis: whether the alleged deprivation is "sufficiently serious." Relying upon McGee's deposition testimony, PHS argues that McGee cannot satisfy the objective prong of the Eighth Amendment test with respect to the discontinuance of his PRN medications because he has failed to provide evidence of a serious medical need. It is true that, at his recent deposition, McGee did not supply many specifics about the effects of the lapses in his PRN medications. When asked to identify the consequences of the discontinuance of medications on June 21st, McGee responded that "I probably had a headache and back pain that went unaddressed." (Doc. 157-3 at 20.) When pressed further, McGee testified

that he could not recall what happened when the medications were discontinued.  (*Id.*)

When asked what the consequences were of the July 7th discontinuance of his

medication, McGee responded that he had headaches, back pain, and constipation

although he had no specific recollection of a headache between July 7 and July 14th.  (*Id.*

at 21–22.)  With regard to constipation, McGee testified that when he cannot take

medications for that condition, it causes him to bleed internally, and that he recalled that

happening at least once.  (*Id.* at 22–23.)  McGee also testified that he could not go

outdoors.  (*Id.* at 22.)  In addition to those relatively sparse assertions, I also consider the

somewhat more specific factual allegations in McGee's January 2011 Opposition,

described *supra*.

There is no indication that the isolated instances of constipation caused McGee

any serious harm.  *See Rivera v. Bloomberg*, Nos. 11 Civ. 629(PGG), 11 Civ.

4325(PGG), 2012 WL 3655830, at *7 (S.D.N.Y. Aug. 27, 2012) (noting that complaints

of constipation do not constitute a serious medical need).  Even some bleeding associated

with that condition has been held to be insufficient for Eighth Amendment purposes.

*Stanfield v. Thompson*, No. 4:12CV-P54-M, 2013 WL 899423, at *10 (W.D. Ky. Mar. 8,

2013).  And even though McGee's allergies allegedly prevented him from going outside

on at least one occasion, that is insufficiently serious to amount to an Eighth Amendment

violation.  *See Davidson v. Scully*, No. 81 Civ. 0390(PKL), 86012, 2001 WL 963975, at

*5 (S.D.N.Y. Aug. 22, 2001) (allergies consisting of seasonal rhinitis and allergies to

dust, plantain, grass, trees, and other antigens "do not produce death, degeneration, or

extreme pain, and are thus not objectively a "serious medical need").

As to McGee's complaints of back pain and headaches, however, "[d]epending upon the facts presented, severe back pain, especially if lasting an extended period of time, and migraine headaches may qualify as 'serious medical needs' under the Eighth Amendment." *Benjamin v. Kooi*, No. 9:07-CV-0506 (LEK/DRH), 2010 WL 985844, at *7 (N.D.N.Y. Feb. 25, 2010). Here, McGee describes the migraine headaches as "severely painful," and states that his worsened back and knee pain prevented him from engaging in normal exercise. (Doc. 71 at 71.) In *Benjamin*, the plaintiff's back pain and migraines apparently persisted for more than a year, 2010 WL 985844, at *7, whereas the symptoms McGee complains of lasted for a matter of weeks. Still, resolving all ambiguities in McGee's favor, I conclude that McGee has presented sufficient evidence to allow a reasonable factfinder to conclude that his back and knee pain combined with his migraines might rise to the level of serious medical needs.

### b.     Subjective Prong: Deliberate Indifference

With respect to all of the consequences of McGee's interrupted PRN medications, however, he fails to meet his burden with respect to the subjective prong of the Eighth Amendment analysis. Here, at most, McGee alleges a disagreement over proper treatment. PHS apparently had a policy to discontinue PRN medications that had been repeatedly refused. McGee alleges that his PRN medications should never have been discontinued, but I cannot conclude that it was criminally reckless for PHS to discontinue medications that had been repeatedly refused. *See Parks v. Chappel-Evans*, No. 2:10-cv-1804 MCE CKD P., 2012 WL 3778878, at *4, *6 (E.D. Cal. Aug. 31, 2012) (nurse practitioner's decision to discontinue inmate's "as needed" pain medication pursuant to

policy authorizing such discontinuance after inmate refuses medication for three days was not an unnecessary or wanton infliction of pain).  Moreover, Nurse Practitioner Vicuna-Keady's unchallenged affidavit reveals that the asserted interruptions of PRN medications were for only brief periods of time and that those medications were resumed by Vicuna-Keady upon McGee's demand.  This conduct falls far short of the requirement that PHS knowingly disregarded a substantial risk of serious harm.

### 3.    Mental Health Medications

PHS argues that it was only responsible for dispensing mental health medication and had no authority to prescribe, modify, or discontinue the mental health medication. Without citation to any supporting legal authority, PHS argues that it cannot be liable for any discontinuance of mental health medication.  In advancing this argument PHS relies upon Nurse Practitioner Vicuna-Keady's review of the contract PHS had with the DOC and PHS's responsibilities under that agreement.  But the contract itself is not before the Court.  McGee's *pro se* verified Complaint, construed liberally, alleges a violation of duty by PHS's "systematic" denial of mental health medications.  Thus the scope of PHS's duties under the contract would be a jury question.  *See Barrett v. Prison Health Servs.*, No. 5:08-CV-203, 2010 WL 2868216, at *5 (D. Vt. Feb. 19, 2010), *rev'd on other grounds*, 2010 WL 2837010 (D. Vt. July 19, 2010) (noting PHS's broad contractual responsibility to implement healthcare in Vermont's correctional system including overlapping duties and continuous interaction with DOC's mental health provider). PHS's argument based on its contract with DOC does not entitle PHS to summary judgment on McGee's Eighth Amendment claim with respect to his mental health

medications.

In response to the Court's Order dated October 21, 2013 (Doc. 162), PHS also asserts that the alleged denial of mental health medications does not rise to the level of an Eighth Amendment violation, and that McGee cannot prove an Eighth Amendment violation because he does not have an expert.  (Doc. 163 at 2.)  For the reasons that follow, I conclude that PHS is entitled to summary judgment because McGee has not shown that the temporary lapse in his mental health medications was objectively serious enough to constitute a constitutional violation.

Here, since McGee was prescribed medication to treat a combination of depression and bipolar and anxiety disorders, it is presumed that he had been diagnosed with and suffered from serious underlying mental health conditions.  Of course, the focus for present purposes is not solely on the underlying conditions, but includes the effects of the interruption in treatment for them.  McGee alleges that he went without his mental health medications "in excess of a week in at least three separate instances," and that as a result he "grew depressed and withdrawn, had anxiety attacks, and turned into a 'shut in' unable to leave his cell due to the distress."  (Doc. 71 at 70.)  He also testified that, when his Wellbutrin was discontinued on June 24th, he felt depressed, paranoid, anxious, and his mood was unstable.  (Doc. 157-3 at 20.)

The impacts of the relatively short interruptions in McGee's mental health medications do not rise to the level of a constitutional violation.  McGee has not presented evidence that his symptoms constituted an urgent situation that might produce death, degeneration, or extreme pain.  *See Bellotto v. Cnty. of Orange*, 248 F. App'x 232,

237 (2d Cir. 2007) (risk of harm was not substantial where alleged missed medication dosages and inadequate monitoring of medications resulted in an anxiety attack but no physical injuries or "acute distress"); *Hamm v. Hatcher*, No. 05 Civ. 403(ER), 2013 WL 71770, at *9 (S.D.N.Y. Jan. 7, 2013) (no significant risk of serious harm where delay in access to medication allegedly resulted in "exacerbated depression, nightmares, hopelessness, and suicidal thoughts").  McGee has presented no evidence that, without his medications, his underlying mental health conditions worsened, that he suffered any acute or extreme mental health consequence, or that he was in immediate danger of doing physical harm to himself.  Moreover, the alleged interruptions were short-lived.

### C.   McGee's State Law Claims

In addition to his Eighth Amendment claims, McGee also asserts violations of Chapter I, Article 18 of the Vermont Constitution and 28 V.S.A. §§ 601, 801, and 853 for the same alleged inadequate medical care.  (Doc. 7 at 99, ¶ 791; *id.* at 112, ¶ 829.)  If the Court concludes that PHS is entitled to summary judgment on McGee's federal claims, the Court should decline to retain supplemental jurisdiction over McGee's state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) ("[I]f [plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").

That conclusion would make it unnecessary to consider PHS's contention that Article 18 of the Vermont Constitution grants no greater rights than the Eighth Amendment, and that the Eighth Amendment analysis is sufficient for all of McGee's constitutional claims against PHS.  (Doc. 157 at 8 n.3.)[3]  Declining to retain supplemental jurisdiction would also make it unnecessary to consider whether McGee's lack of an expert defeats any medical negligence claim that he might be making.

## II.    Nurse(s) Doe and Nurse Manager Doe

McGee's Complaint names Nurse(s) Doe and Nurse Manager Doe as Defendants in their individual capacities.  (Doc. 7 at 7, ¶¶ 45–46.)  McGee asserts that he does not know the names of Nurse(s) Doe and Nurse Manager Doe, but that their names will be revealed through discovery and incorporated into an amended complaint.  (Doc. 7 at 7, ¶¶ 45–46 nn.1–2.)  As noted above, Nurse(s) Doe and Nurse Manager Doe allegedly maintained a custom of failing to renew and re-order inmates' chronic prescriptions before they expired, and of allowing non-prescribers (*i.e.*, nurses or administrative staff) to discontinue inmates' medications without warning before the prescriptions had expired.  It appears that Nurse(s) Doe and Nurse Manager Doe were PHS employees between April and July 2009, and that they were the individual PHS agents who allegedly discontinued McGee's medications or allowed them to expire.

Discovery is now closed—the deadline for discovery was July 1, 2013.  (Doc. 153.)  McGee has not, however, amended his Complaint to supply the names of Nurse(s)

---

[3] I note that the Vermont Supreme Court recently declined to decide whether the Vermont Constitution provides greater protection against "cruel and unusual punishment" than the Eighth Amendment.  *See Bain v. Hofmann*, 2010 VT 18, ¶ 8, 993 A.2d 432, 435 (mem.) (plaintiff only raised the issue for the first time on appeal).

Doe and Nurse Manager Doe.  That might constitute grounds for dismissal (without prejudice) of the claims against them.  *See* Fed. R. Civ. P. 4(m); *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 345–46 (6th Cir. 2007) (affirming dismissal of claims against John Does after sufficient time had passed for the plaintiff to identify them).  Even assuming that the unnamed nurses remain in PHS's employ and have constructive notice of McGee's suit, that is not enough to make them parties.  *Petty*, 478 F.3d at 346.

More importantly, however, the analysis above regarding PHS's Motion for Summary Judgment suggests that McGee's federal claims against Nurse(s) Doe and Nurse Manager Doe are likewise without merit, and that those claims should therefore be dismissed with prejudice.  Pursuant to Fed. R. Civ. P. 56(f)(1), the Court has supplied McGee with notice and a reasonable time to respond to that suggestion.  (Doc. 164.)  McGee did not file any response.  I therefore recommend that the Court, on its own motion, GRANT summary judgment for Nurse(s) Doe and Nurse Manager Doe on McGee's federal claims against them, and that the Court decline to retain supplemental jurisdiction over McGee's state law claims against the unnamed nurses.

## III.    The State Defendants' Motion to Dismiss

This is not the first time that the State Defendants have sought dismissal of the claims against them for McGee's failure to meet his discovery obligations.  In a Rule 37 Motion to Dismiss dated July 3, 2013, the State Defendants argued that McGee had "willfully violated" this Court's May 6, 2013 Discovery Order (Doc. 152) and had refused to respond to repeated requests for discovery.  (Doc. 155 at 1–2.)  The State Defendants also argued that McGee was in violation of the Court's May 6, 2013

Amended Discovery Scheduling Order (Doc. 153), which required discovery to be

complete by July 1, 2013.  (Doc. 155 at 3.)

In a Report and Recommendation dated August 13, 2013, I recommended that the

State Defendants' Motion be denied, reasoning that the severe sanction of dismissal was

not appropriate because McGee had not been warned that failure to comply with

discovery orders or to respond to discovery requests could result in the dismissal of his

case in its entirety.  (Doc. 156 at 18.)  However, I also concluded that McGee had failed

to comply with his discovery obligations for many months, and that his lengthy

noncompliance could be deemed willful.  (*Id.* at 18–21.)  Since dismissal was not an

appropriate sanction, and an appropriate lesser sanction was not apparent, I ordered

McGee to respond to all outstanding discovery requests, and suggested holding a

discovery conference.  (*Id.* at 21.)  I also explicitly warned McGee that his continued

failure to respond to discovery requests or abide by court orders compelling such

responses "can—and likely will—result in dismissal of this action in whole or in part, as

well as any of the other lesser sanctions enumerated in Fed. R. Civ. P. 37(b)(2)."  (*Id.* at

22.)  The District Court adopted the August 13, 2013 Report and Recommendation in an

Order dated September 24, 2013, and returned the matter to the undersigned Magistrate

Judge for further proceedings.  (Doc. 158.)

The Court issued a Notice of Hearing on October 1, 2013, scheduling a discovery

conference for October 15, 2013.  (Doc. 159.)  The Court convened the noticed hearing

on October 15, but McGee failed to appear, and the Court advised counsel to file

whatever motions they deemed appropriate.  (Doc. 160.)  The State Defendants filed the

20

pending Motion to Dismiss on October 17, 2013.  (Doc. 161.)[4]  In support, the State

Defendants have supplied the affidavit of their counsel, who represents that, as of

October 17, 2013, McGee has still not responded to any of the State Defendants'

discovery requests or complied with the Court's May 6, 2013 and August 13, 2013

Orders.  (Doc. 161-1 at 4, ¶ 21.)  McGee has not filed any response since October 17, and

the State Defendants have not advised the Court that McGee has complied with the prior

discovery requests or Court Orders.

     As I previously noted, Rule 37 of the Federal Rules of Civil Procedure addresses

the consequences of a party's failure to respond to discovery requests or comply with

discovery orders.  Under that Rule, a court may order sanctions where a party, as relevant

here, either fails to respond to interrogatories, Fed. R. Civ. P. 37(d)(1)(A)(ii), or fails to

comply with an order to provide discovery, Fed. R. Civ. P. 37(b)(2)(A).  The Rule

permits a range of sanctions for such violations, from "staying further proceedings until

the order is obeyed" to "dismissing the action or proceeding in whole or in part."  Fed. R.

Civ. P. 37(b)(2)(A)(iv), (v); Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the

orders listed in Rule 37(b)(2)(A)(i)–(vi)."); Fed. R. Civ. P. 16(f) (authorizing sanctions

under Rule 37(b) for "fail[ure] to obey a scheduling or other pretrial order"); Fed. R. Civ.

P. 41(b) (permitting dismissal "[i]f the plaintiff fails to prosecute or to comply with these

rules or a court order").  Disciplinary sanctions serve three purposes:

     First, they ensure that a party will not benefit from its own failure to

---

[4]  With their Motion to Dismiss, the State Defendants filed the necessary certification explaining their good faith efforts to resolve the discovery issues without court action.  (Doc. 161-1.)  *See* Fed. R. Civ. P. 37(d)(1)(B); L.R. 26(d).

> comply.  Second, they are specific deterrents and seek to obtain compliance
> with the particular order issued.  Third, they are intended to serve a general
> deterrent effect on the case at hand and on other litigation, provided that the
> party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  Mindful of the

importance of these goals, the Second Circuit recognizes that district courts are vested

with "broad power" and discretion to impose sanctions under Rule 37.  *Friends of*

*Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997) (per curiam).

When exercising that discretion, the Court considers: "(1) the willfulness of the

non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the[]

noncompliance; and (4) whether the non-compliant party had been warned that

noncompliance would be sanctioned."  *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d

444, 451 (2d Cir. 2013) (internal quotation marks omitted).  "The severe sanction of

dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro*

*se*, so long as a warning has been given that noncompliance can result in dismissal."

*Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (per curiam).

Here, the Court's earlier conclusions as to McGee's lengthy and willful

noncompliance with his discovery obligations and with the Court's orders continue to

hold.  McGee has been in violation of the Federal Rules of Civil Procedure since early

November 2012—thirty days after the State Defendants filed their first requests for

production, (Doc. 135).  *See* Fed. R. Civ. P. 34(b)(2)(A).  It is now December 2013, a

delay of more than one year.  Far lesser delays have been deemed sufficient to support

dismissal.  (*See* Doc. 156 at 19.)  The lengthy delay prejudices the State Defendants, and

impedes the efficient administration of justice.  (*See id.*)  In addition, there is substantial

evidence of the willfulness of McGee's noncompliance, including his demonstrated

understanding of court deadlines, along with his persistent refusal to comply with

multiple clear and explicit discovery orders—most recently, this Court's August 13, 2013

Order.  (*See id.* at 20–21.)

The relief that the State Defendants seek—dismissal with prejudice—is "a drastic

remedy that should be imposed only in extreme circumstances, usually after

consideration of alternative, less drastic sanctions."  *John B. Hull, Inc. v. Waterbury*

*Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (citation and internal

quotation omitted).  However, as the Court previously noted, a lesser sanction is difficult

to identify.  (Doc. 156 at 21.)  Given McGee's *in forma pauperis* status, it would be

unjust to impose a monetary sanction.  *See Avallone v. Hofmann*, No. 5:06-CV-253, 2010

WL 957553, at *3 (D. Vt. Mar. 15, 2010) (plaintiff's *in forma pauperis* status made

monetary sanctions inappropriate); *Haines v. Cook*, No. 1:07-CV-138, 2009 WL

2043865, at *2 (D. Vt. July 8, 2009) (noting that *in forma pauperis* status "weighs

heavily against imposing" a monetary sanction).  In addition, the requested discovery

relates to all of McGee's claims, so striking pleadings or limiting McGee's use of

evidence would have the same effect as dismissal.  *See Langdell v. Hofmann*, No. 1:05-

CV-174, 2006 WL 3813599, at *5 (D. Vt. Dec. 27, 2006) (declining to impose lesser

sanction where it "would render the same result as dismissal").

Finally, McGee has been warned in no uncertain terms that noncompliance would

be sanctioned.  Indeed, the Court warned him that his continued failure to respond to

discovery requests or abide by court orders compelling such responses "can—and likely will—result in dismissal of this action in whole or in part, as well as any of the other lesser sanctions enumerated in Fed. R. Civ. P. 37(b)(2)."  (Doc. 156 at 22.)  Thus McGee has been warned, and explicitly warned that his continued noncompliance would likely result in dismissal.

In light of all of the above circumstances, I conclude that dismissal (with prejudice) of McGee's claims against the State Defendants is appropriate under Fed. R. Civ. P. 37(b)(2)(A)(v).  Moreover, dismissal under Fed. R. Civ. P. 41(b) for failure to prosecute is also appropriate for largely the same reasons.  The factors that the Court considers on a Rule 41(b) motion are similar to the factors under Rule 37:

> (1) [whether] the plaintiff's failure to prosecute caused a delay of significant duration; (2) [whether] plaintiff was given notice that further delay would result in dismissal; (3) [whether] defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion . . . balanced against plaintiff's right to an opportunity for a day in court; and (5) . . . the efficacy of lesser sanctions.

*Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).  For the reasons discussed above, each of those factors weighs in favor of dismissal for failure to prosecute under Rule 41(b).

## IV.   Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

*Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").   Nonetheless, leave to amend may be denied in certain circumstances, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."   *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, amendment would not solve the problem of McGee's violations of the Federal Rules of Civil Procedure.   I therefore recommend that leave to amend with respect to his claims against the State Defendants be denied.   As to McGee's claims against PHS, the Court has not previously granted any motion to amend (*see* Doc. 84 at 54), and it is possible that better pleading might cure some of the problems with those claims.   Although McGee's discovery violations have caused delay in this case, those violations relate to the State Defendants, not to PHS or the unnamed nurses.   I therefore recommend granting leave to amend the claims against PHS, Nurse(s) Doe, and Nurse Manager Doe.   Any amended filing should be entitled "Amended Complaint," should supply names for Nurse(s) Doe and Nurse Manager Doe, and should contain all claims against all parties as it will supersede the original Complaint in all respects.   An Amended Complaint, if any, shall be filed within 30 days.   Failure to so amend should result in the dismissal with prejudice of all claims against PHS, Nurse(s) Doe, and Nurse Manager Doe.

**Conclusion**

For the reasons set forth above, I recommend that PHS's Motion for Summary Judgment (Doc. 157) be GRANTED with respect to McGee's federal claims, and that the Court decline to retain supplemental jurisdiction over his state law claims.  For the same reasons, I recommend that the Court, on its own motion, GRANT dismissal of McGee's federal claims against Nurse(s) Doe and Nurse Manager Doe, and decline to retain supplemental jurisdiction over his state law claims against them.  McGee should be allowed 30 days to file an Amended Complaint with respect to his claims against PHS, Nurse(s) Doe, and Nurse Manager Doe.  Failure to so amend should result in the dismissal with prejudice of all of McGee's claims against PHS and the unnamed nurses.  I further recommend that the State Defendants' Motion to Dismiss (Doc. 161) be GRANTED.  All of McGee's claims against the State Defendants should be DISMISSED with prejudice.

Dated at Burlington, in the District of Vermont, this 20th day of December, 2013.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).